UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11551-RWZ

MORTIMER OFF SHORE SERVICES, LTD.,
and RONNIE FULWOOD

v.

FEDERAL REPUBLIC OF GERMANY, *et al.*

ORDER

August 21, 2012

ZOBEL, D.J.

Plaintiffs brought this action to collect accrued principal and interest on 1,694 German pre-World War II agricultural bonds. In this court's Memorandum of Decision of March 28, 2012, 2012 WL 1067648, incorporated herein, the court barred the claims of plaintiff Mortimer Off Shore Services, Ltd. ("Mortimer") against the Federal Republic of Germany's ("FRG") because they had already been adjudicated by the Southern District of New York and the Second Circuit (hereinafter, "the New York suit").[1] See 2012 WL 1067648, at *6-11. As to plaintiff Ronnie Fulwood, who was not a party to the New York suit, the court dismissed his claims to bonds issued by banks located in the territory that became West Germany ("West German bonds"), but deferred on the issue of whether it has subject matter jurisdiction over his claims to bonds issued by banks

---

[1] See Mortimer Off Shore Servs. Ltd. v. Fed. Republic of Germany, 615 F.3d 97 (2d Cir. 2010) [hereinafter, "Mortimer I"], aff'g, No. 05-10669-GEL, 2007 WL 2822214 (S.D.N.Y. Sept. 27, 2007), cert denied, 131 S. Ct. 1502 (2011) .

located in territory that became East Germany ("East German bonds"). Id. at *6, 11. Specifically, the court requested supplemental briefing on the issue of whether the so-called "1938 Guaranty" was an "action . . . based upon a commercial activity," 28 U.S.C. § 1605(a)(2), that, if proven, would give rise to subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") for Fulwood's claims to the East German bonds. Having now considered the parties' submissions, I find that the court lacks subject matter jurisdiction and therefore grant the FRG's motion to dismiss Fulwood's claims to the East German bonds.

**I.     Background**

The FSIA provides that a foreign state "shall be immune from the jurisdiction of the courts of the United States," id. § 1604, unless an enumerated exception applies, id. §§ 1605-07. There is no dispute that the FRG is a foreign state as defined by the FSIA. Id. § 1603(a). The Act's commercial activity exception states, in relevant part, that a foreign state is not immune where

> the action is based [i] upon a commercial activity carried on in the United States by the foreign state; or [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Id. § 1605(a)(2). The plaintiff bears the burden of showing that the commercial activity exception applies. Mortimer I, 615 F.3d at 105.

In the New York suit, the Second Circuit decided that it lacked subject matter jurisdiction over Mortimer's claims to the East German bonds because "Mortimer had

2

failed to make the threshold showing necessary to invoke the commercial activity exception to the FSIA. . . ." Id. at 99. As this court summarized,

> The Second Circuit rejected Mortimer's contention that the FRG had assumed an obligation on the East German bonds through succession and various other "acts of recognition." Specifically, the court held that: (1) "automatic assumption of liability by a successor state, even if established, would not meet the requirements of the FSIA's commercial activity exception"; and (2) Mortimer presented no evidence "that East Germany and the FRG explicitly assumed liability for any East German Agricultural Bonds, unlike West Germany, which affirmatively and unequivocally assumed liability for valid West German Agricultural Bonds by enacting the Validation Law and subsequent treaties[.]

2012 WL 1067648, at *4 (citing Mortimer I, 615 F.3d at 109).

Here, in addition to the evidence which Mortimer proffered in the New York suit, Fulwood claims that the "1938 Guaranty" (Docket # 18, Ex. A) was an affirmative assumption of liability by the FRG for the bonds, including the East German bonds, such that it invokes the FSIA's commercial activity exception. The Guaranty was an October 18, 1938 agreement between the German Reich and the German Landesbankenzentrale. The parties dispute the precise nature of the agreement: the FRG argues that it was a guaranty to the banks (and not to the bondholders) for loans made by the banks, including the agricultural bonds; Fulwood contends that the agreement was a guaranty to the bondholders of all principal and interest on the bonds. Even if Fulwood's characterization is correct, however, the Guaranty is not an "action . . . based upon a commercial activity" under section 1605(a)(2).

As the Southern District of New York explained, in the past century, "[t]he German state was occupied, destroyed, and reconstituted, first in pieces and then through reunification, and the relation of the present Federal Republic to the pre-war

3

governments of Germany is a classic example of state succession." Order, No. 05-cv-10669-GEL, (S.D.N.Y. Apr. 8, 2008), ECF No. 26. See also 2012 WL 1067648, at *1 (discussing history of German state succession). Fulwood alleges that the FRG is "identical" to the "pre-World War II German Reich and is the legal successor to its political subdivisions, including the State of Prussia ("Prussia"), as well as [East Germany]." Compl. ¶ 9. However, mere accession to liability is not a commercial action under the FSIA. Mortimer I, 615 F.3d at 110 ("Accession to liability by the rules of customary international law entails no action by the successor state with respect to the commercial activity at issue–the assumption of liability. The state performs no action when it automatically assumes liability."); id. ("Because no 'action' within the meaning of § 1605(a)(2) occurs when a successor state accedes to liability, the requirements of FSIA's commercial activity exception are not met in that context and jurisdiction under the FSIA based on such an accession will not lie.").

Nor is the 1938 Guaranty an affirmative assumption of liability by the FRG over the East German bonds. Adopting Fulwood's characterization of the Guaranty at most establishes that the pre-World War II German Reich guaranteed payment on the bonds. West Germany did not exist as a state until 1949 and the present-day FRG did not exist until reunification in 1990, eleven and fifty-two years, respectively, after the 1938 Guaranty was made. Thus, it is impossible for the Guaranty to represent an affirmative assumption of liability by the FRG to the East German bonds.[2]

---

[2] Before reunification, the FRG did explicitly assume pre-war debt, but only for the West German bonds. See Mortimer I, 615 F.3d at 111 (noting that the London Debt Accord did not obligate the FRG to compensate holders of bonds issued in what became East Germany); id. at 112-13 (noting that neither

4

Although Fulwood alleges that, under the Unification Treaty of 1990, the FRG assumed liability for "the sureties, guarantees and warranties assumed by [East Germany]," Compl. ¶ 53, he has "failed to allege an affirmative act by which East Germany assumed liability for debt issued within the German Reich, let alone the state of Prussia." Mortimer I, 615 F.3d at 112 (emphasis added). Thus, as with Mortimer in the New York suit, Fulwood "provides no basis for liability beyond speculation that East Germany assumed liability for the bonds." Id. Such speculation is insufficient to satisfy Fulwood's burden. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II. Conclusion

Defendant Federal Republic of Germany's Motion to Dismiss (Docket # 23) is ALLOWED for lack of subject matter jurisdiction as to plaintiff Fulwood's claims to the East German bonds.

|  August 21, 2012  |  /s/Rya W. Zobel  |
|---|---|
|  DATE  |  RYA W. ZOBEL  |
|  |  UNITED STATES DISTRICT JUDGE  |

---

the letter from German Chancellor Konrad Adenauer to the Allied High Commission, nor the FRG's letter to the United States Securities and Exchange Commission, provide an "independent legal basis for holding FRG liable for East German Bonds" nor "expressly mentions the East German Bonds at issue; instead, each discusses West Germany's affirmative assumption of liability for the German Reich's pre-war external debts issued in what became West Germany.").